**JASON P. WRIGHT**
**JACQUELINE A. WRIGHT**
**9449 NE Keyes Ln Dundee, OR 97115**
**971-545-1070 | 503-550-6939**
**jwrightmasonry@frontier.com**
**jjwrightmasonry@gmail.com**
**Plaintiffs Pro Se**

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**Portland Division**

| | |
|---|---|
| JASON P WRIGHT AND )<br>)<br>JACQUELINE A WRIGHT, )<br>)<br>Plaintiffs, )<br>V. )<br>)<br>NATIONSTAR MORTGAGE LLC d/b/a )<br>MR COOPER d/b/a RUSHMORE )<br>SERVICING, CARRINGTON MORTGAGE )<br>LLC, BARCLAYS BANK PLC, ALDRIDGE )<br>PITE LLP, RAZZLE DAZZLE PROPERTIES)<br>LLC, CLEAR RECON CORP, CHANDLER )<br>& NEWVILLE, WILLCUTS CO REALTORS )<br>QUICK COLLECT, KINDRED LLC, | Case No. 3:26-cv-00987-AN<br><br>FIRST AMENDED COMPLAINT<br><br>DEMAND FOR JURY TRIAL |

# FIRST AMENDED COMPLAINT

DEMAND FOR JURY TRIAL

I. THE PARTIES TO THIS COMPLAINT

**A. The Plaintiffs**

**1. Plaintiff Jason P. Wright**
Address: 9449 NE Keyes Ln., Dundee, OR 97115
Phone/Email: 971-545-1070 | jwrightmasonry@frontier.com

**2. Plaintiff Jacqueline A. Wright**
Address: 9449 NE Keyes Ln., Dundee, OR 97115
Phone/Email: 503-550-6939 | jwrightmasonry@gmail.com

**B. The Defendants**

(See attached listing sheet for full addresses of all corporate and individual defendants listed in the caption above).

**II. BASIS FOR JURISDICTION**

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, specifically:

- The Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605
- RESPA Regulation X, 12 C.F.R. § 1024.41
- The Truth in Lending Act (TILA), 15 U.S.C. §§ 1635 and 15 U.S.C. § 1641(g)
- The Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692
- Civil Rights Protections under 42 U.S.C. § 1983
- Federal Mail and Wire Fraud Statutes (as predicate acts)

Supplemental jurisdiction exists under 28 U.S.C. § 1367 over all related state-law claims, including violations of ORS 86.713 and wrongful foreclosure. Venue is proper under 28 U.S.C. § 1391 because the subject real property is located in Yamhill County, Oregon, and the events giving rise to these claims occurred in this District.

**III. STATEMENT OF CLAIM**

**A. Introduction & Background**

1. This action arises from the wrongful foreclosure, predatory servicing practices, and forced transfer of Plaintiffs' family home, business property, and agricultural property located at 9449 NE Keyes Ln, Dundee, Yamhill County, Oregon (the "Property"), executed in direct violation of federal consumer protection laws and state real estate protections.

2. Plaintiffs purchased the Property in approximately 2006 and have continuously occupied, maintained, improved, and operated their primary residence, family masonry business, and agricultural livestock operations on the Property for twenty years. (See attached deeds, mortgage paperwork attached as Exhibits 02 Pages 1-4).

**B. Reinstatement Attempts & Impossible Banking Deadlines**

3. Prior to the scheduled non-judicial trustee's sale on February 17, 2026, Plaintiffs actively sought to exercise their statutory right to cure default and fully reinstate their loan under ORS 86.778. (Exhibit 01 Page 1).

4. Plaintiffs actively attempted to secure precise reinstatement figures and tender loan reinstatement funds on February 13, 2026, multiple times on February 16, 2026, and on the morning of the scheduled trustee's sale on February 17, 2026. (See Plaintiffs' phone records attached as (Exhibit 09 Pages 1-4).)

5. Monday, February 16, 2026, was President's Day—a recognized state and federal banking holiday. Because all commercial banking institutions and wire networks were legally closed, compliance with any single-day payment deadline on that date was a physical and legal impossibility.

6. Despite this public holiday, Defendant Clear Recon Corp, through its legal counsel Shannon K. Calt, aggressively asserted that Plaintiffs' reinstatement window strictly expired on February 16, 2026, and flatly refused to honor, accept, or verify a wire transfer tendered on the next available business day, February 17, 2026. (See March 4, 2026 Email, attached as (Exhibit 08 Page 1).)

7. Defendants failed to provide accurate, timely, and complete reinstatement figures within a reasonable timeframe and actively obstructed Plaintiffs' ability to exercise their statutory right to cure. Under Oregon law, a failure to honor a borrower's reinstatement right is a per se statutory violation that completely renders any subsequent trustee's sale void or voidable.

**C. Pattern of Prohibited Dual-Tracking**

8. From the initial date of Plaintiffs' Qualified Written Request (QWR) through the date of the sale, Defendants, acting individually and in concert, continued to advance, facilitate, and execute non-judicial foreclosure proceedings against Plaintiffs simultaneously with, and despite the existence of, an open, acknowledged, and completely unresolved written dispute.

9. This simultaneous pursuit of a foreclosure auction while a formal borrower dispute is actively pending is the precise corporate conduct strictly prohibited as "dual-tracking" under RESPA Regulation X, 12 C.F.R. § 1024.41, and Consumer Financial Protection Bureau (CFPB) mortgage servicing rules.

10. The corporate transfer of servicing from Defendant Rushmore to Defendant Carrington via the February 27, 2026 notice did not suspend, interrupt, or reset the federal prohibition on dual-tracking. Defendant Carrington inherited and continuously advanced Rushmore's open dual-tracking violations upon acquiring the servicing rights to the loan account.

D. Concealment of Beneficial Ownership

11. On January 29, 2026, legal title and beneficial ownership of Plaintiffs' loan was transferred to Defendant Barclays Bank PLC (See Exhibit 3).

12. Pursuant to 15 U.S.C. § 1641(g), Defendants were required to notify Plaintiffs of this transfer within 30 days. Defendants intentionally withheld this information, failing to issue a Notice of Sale of Ownership until February 23, 2026—six days after the non-judicial trustee's sale had already been executed (See Exhibit 4A & 4B).

13. Due to this statutory concealment, Plaintiffs were completely deprived of their right to know the identity of the true creditor, making it impossible to direct accurate reinstatement funds, qualified written requests, or TILA rescission notices to the proper party prior to the February 17, 2026 auction.

E. Trustee Misconduct & Sale Irregularities

14. Clear Recon Corp conducted a trustee sale under circumstances indicating a pre-arranged transaction. Trustee attorney Shannon Calt explicitly admitted on March 4, 2026, that even if Plaintiffs wired funds the morning of the sale, the sale would not have been stopped.

15. Trustee documents were signed 10 days after the sale, notarized in California by Jazmin Chavez despite involving an Oregon property, and signed by "Authorized Signor" Monica Chavez, whose legal authority and timing are defective and unverified (Exhibits 03 & 06).

16. Clear Recon Corp responded to Plaintiffs' timely legal objections with a blanket denial letter without substantively engaging, without verifying the chain of authority from the current beneficiary, and without pausing or investigating the proceedings in response to Plaintiffs' objections.

FIRST AMENDED COMPLAINT

**F. Post-Sale Rescission Notice**

17. On or about February 18, 2026—exactly one day following the contested trustee's sale—Plaintiffs served a formal written Notice of Rescission on Defendants pursuant to the Truth in Lending Act (TILA), 15 U.S.C. § 1635, based on material disclosure failures in connection with the loan. (See attached USPS receipts; rescission letter attached as **Exhibit 03, Pages 1–3**).
18. As confirmed by the United States Supreme Court in *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259 (2015), a borrower validly exercises the right of rescission under TILA simply by providing written notice to the lender alone; no conditional court action is required to initially trigger the rescission.
19. Upon actual receipt of Plaintiffs' written rescission notice, Defendants were legally obligated under 15 U.S.C. § 1635(b) to respond, return any money or property, and take appropriate ownership action within twenty (20) calendar days.
20. Defendants completely failed to respond to or honor Plaintiffs' rescission notice within the required twenty (20) days, creating independent statutory liability under TILA.

**G. The Insider Investor Pipeline & Eviction Irregularities**

21. Plaintiffs have uncovered evidence of a tightly knit, long-standing insider investor pipeline designed to rapidly flip foreclosed properties and strip consumer equity for private profit.
22. Following the unlawful trustee sale, an eviction action was initiated against Plaintiffs in the Circuit Court of the State of Oregon for the County of Yamhill, styled as *Razzle Dazzle Properties, LLC v. Jason P. Wright and Jacqueline A. Wright*, Case No. 26LT06196. (See attached documents, attached as **Exhibit 10, Page 3**).
23. As a core component of this predatory pipeline, Defendants Chandler and Newville utilized the real estate services of Defendant Willcuts Company Realtors, specifically through its licensed agent, Defendant Renee Atkinson, to execute the transfer paperwork moving interests from Chandler and Newville over to Razzle Dazzle Properties, LLC. Chandler and Newville have an existing and ongoing business relationship where one of their LLCs buys and then the property or home is "sold" again to the other LLC. They are on record as being "partners" and doing many real estate business deals together (**Exhibit 14,**

**Exhibit 14, Pages 1–5**), which would make the sale not to a "3rd party buyer" (**Exhibits 13, Page 3**).

24. Documented records reveal that Agent Renee Atkinson and Willcuts Company Realtors have maintained an active, continuous, and personal business relationship with Defendants Chandler and Newville for over ten (10) years, regularly ordering real estate actions and handling property transactions on their behalf.

25. This decades-long business relationship demonstrates that the post-foreclosure transfers of Plaintiffs' multi-million dollar property were not arm's-length transactions to innocent, random third-party buyers. Instead, they constitute a pre-arranged, collusive liquidation scheme orchestrated by local real estate insiders who possessed advance knowledge of the structural defects in the trustee's sale. (See attached documents of the Atkinson, Chandler, and Newville business relationship prior to the Willcuts Realty job, **Exhibit 14, Pages 7–9**).

Real estate agent, Renee Atkinson was employed for approximately ten (10) consecutive years by Defendant Chandler & Newville, Inc., acquiring specialized, inside institutional knowledge of local residential asset acquisitions and transition pipelines. Defendant Atkinson subsequently transferred her professional licensing presence to Defendant Willcuts Company Realtors. Plaintiffs allege that Defendant Atkinson personally utilized this multi-company nexus and her specialized background to actively process, notarize, and execute the structural deed transfers of the subject property from Chandler & Newville, Inc. to Razzle Dazzle Properties, LLC, acting as the core human link coordinating the corporate transition pipeline.

26. The state eviction proceedings have been affected so severely by the procedural irregularities that on June 17, 2026, the presiding Court Judge stepped down to "avoid the appearance of any bias." (See **Exhibit 10, Pages 1 & 2**).

These overlapping personal, professional, and transactional relationships—including the actors and associated individuals—support Plaintiffs' allegation that the foreclosure sale and subsequent transfer of Plaintiffs' multi-million-dollar property were not random or neutral transactions, but were instead part of a coordinated insider pipeline designed to rapidly acquire and flip foreclosed homes for private profit.

1. **The Infrastructure and Excavation Phase:** Managed primarily by independent builder and developer Jim Fettig out of the operational hub located at 17705 NE Chehalem Drive, which handles the physical site layout, structural engineering, and preliminary land modifications.
2. **The Corporate Construction and Development Phase:** Managed directly by the Noble family through the registered corporate headquarters of Noble House Construction, located immediately adjacent at 17025 NE Chehalem Drive, which handles general contracting, structural updates, and local land partitioning.
3. **The Retail Brokerage and Market Disposition Phase:** Managed by Principal Broker Heidi Thomason and the Red Hills Home Team operating through Premiere Property Group, LLC, registered or transacted out of the adjacent parcel at 17125 NE Chehalem Drive, which serves as the exclusive sales, listing, and marketing arm to transition these developed properties into high-value capital assets. (Exhibit 15, Pages 1–5).

Plaintiffs allege that the close geographic proximity of these three operational properties—spanning less than half a mile and sitting as immediately adjacent, partitioned tax lots—demonstrates a continuous, structured, and intentional business relationship. The private Defendants utilize this geographic proximity and their respective real estate licenses to coordinate the acquisition, structural alteration, and swift resale of localized Yamhill County real property assets for mutual commercial gain. (Exhibit 15, Pages 1–4).

Plaintiffs further allege that they worked for Del Boca Vista for more than twenty (20) years. Del Boca Vista was/is owned and/or operated by members of the Willcuts family or individuals associated with the Willcuts. Through that long-term employment relationship, Plaintiffs became personally acquainted with the Willcuts and their business operations over the course of more than two decades.

Defendant Matt Willcuts previously acted as Plaintiffs' real estate agent in the sale of Plaintiffs' former residence and later represented Plaintiffs in the purchase of the subject property. As a result, Matt Willcuts possessed extensive knowledge of Plaintiffs and their property. (Exhibit 14, Page 10).

Lori Goodwin served as Plaintiffs' real estate agent for the seller of the Dundee property, and for Plaintiffs' mother's home, and Plaintiffs have maintained a friendship and professional relationship with Lori Goodwin for more than twenty (20) years. Plaintiffs allege this longstanding relationship is relevant because it demonstrates the parties' familiarity with Plaintiffs and the subject property.

## H. HARASSMENT BY KINDRED, LLC TO PLAINTIFFS AND PLAINTIFFS' FAMILY

27. Plaintiffs incorporate all prior paragraphs by reference.
28. The morning immediately following the trustee's auction of Plaintiffs' home, an individual identifying himself as "Connor Clark" of Kindred, LLC entered the Plaintiffs' property despite clearly visible "NO TRESPASSING" signs.
29. Kindred, LLC representatives approached Plaintiffs during a period of extreme distress and attempted to pressure Plaintiffs into signing documents related to "surplus recovery," which Plaintiffs reasonably believed involved signing away rights connected to their home and foreclosure.
30. Kindred, LLC engaged in a pattern of harassment by repeatedly contacting numerous members of Plaintiffs' extended family, including Plaintiffs' sister-in-law, brother-in-law, father, aunt, uncle, cousins, and siblings.
31. These contacts occurred through multiple phone calls, text messages, and emails, often repeated several times per day, causing confusion, alarm, and emotional distress among Plaintiffs' relatives.
32. Plaintiffs never provided Kindred, LLC with permission to contact any family members, nor did Plaintiffs authorize the release of their relatives' contact information.
33. Kindred, LLC's conduct caused embarrassment, humiliation, and emotional harm to Plaintiffs, who were forced to explain the foreclosure situation repeatedly to family members who had been contacted without consent.
34. The widespread family contact amplified Plaintiffs' emotional distress during an already traumatic period following the foreclosure auction.
35. Kindred, LLC's conduct was willful, malicious, and carried out with reckless disregard for Plaintiffs' rights, including entering Plaintiffs' property despite posted "No Trespassing" signs and attempting to coerce Plaintiffs into signing documents immediately after the foreclosure auction.
36. Kindred, LLC's repeated and unauthorized contact with Plaintiffs' extended family demonstrates intentional harassment designed to pressure Plaintiffs into engaging with Kindred, LLC's surplus recovery services.
37. Kindred, LLC continued contacting Plaintiffs and their family members even after being informed that Plaintiffs were represented by counsel, showing deliberate disregard for legal boundaries and Plaintiffs' emotional well-being.
38. The nature, frequency, and intrusiveness of Kindred, LLC's conduct justify the imposition of punitive damages to deter Kindred, LLC and similar entities from

engaging in coercive, predatory, and harassing practices targeting vulnerable homeowners (Exhibits 12, Pages 1–7).

39. Plaintiffs seek punitive damages in an amount sufficient to punish Kindred, LLC and deter future misconduct.
40. Quick Collect generated false and unauthorized lien entries in Plaintiffs' mortgage records, left unsolicited paperwork and materials on Plaintiffs' property despite posted "No Trespassing" signs, and attempted improper service connected to a Marion County action for which Plaintiffs received no lawful notice and which had no valid basis. These actions caused confusion regarding lien validity, payment authority, and whether unauthorized legal proceedings were being initiated against Plaintiffs.
41. Quick Collect's false lien entries, improper attempted service, and unauthorized placement of materials on Plaintiffs' property constitute trespass, deceptive practices, and unlawful initiation of legal process, for which Plaintiffs seek damages and any other relief the Court deems just and proper.

## I. DEFECTIVE NOTICES & DELAYED DELIVERY

42. Plaintiffs received multiple legally required statutory notices well after the stated effective dates printed on the face of those notices, systematically depriving Plaintiffs of a meaningful opportunity to respond within required statutory timeframes.

## J. EVIDENCE OF SEVERE FINANCIAL DAMAGES AND EQUITY STRIPPING

43. The non-judicial foreclosure sale constituted a predatory scheme to strip nearly two decades of accumulated property equity.
44. While immediate neighboring grid comparables on NE Keyes Ln establish regional property values well over $1,000,000 and a nearby 2.25-acre agricultural viticultural property was liquidated far below market value, which looks to be pre-arranged inside buyers (see Exhibit 01, Page 2). As a direct result, Plaintiffs suffered intense, specialized economic damage in Oregon, including the total cannibalization of their established 20-year multi-mil homestead and agricultural investment, constituting willful equity stripping and unlawful trade practices under ORS 646.608.

## IV. CAUSES OF ACTION

### COUNT I: VIOLATION OF RESPA (12 U.S.C. § 2605(e))

*(Against Defendant Nationstar Mortgage LLC d/b/a Rushmore Servicing)*

41. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
42. Plaintiffs' written dispute constituted a Qualified Written Request (QWR) under **12 U.S.C. § 2605(e)(1)(B)**.
43. Rushmore received the QWR and acknowledged it on February 20, 2026, promising a full review by March 5, 2026 (See **Exhibit 3**).
44. Rushmore failed to provide a substantive written response or verify the account within thirty (30) business days of receipt, as required by **12 U.S.C. § 2605(e)(2)**.
45. As a proximate result of Rushmore's violation, Plaintiffs suffered actual damages including costs, fees, loss of business revenue, and severe emotional distress.

### COUNT II: VIOLATION OF RESPA (12 U.S.C. § 2605(b))

*(Against Defendants Rushmore and Carrington)*

46. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
47. RESPA **§ 2605(b)(1)** requires that a transferring servicer provide written notice to the borrower at least fifteen (15) days before the effective date of any servicing transfer.
48. Rushmore's notice did not satisfy the 15-day advance notice requirement because the effective transfer date occurred during a structural collapse of servicing transparency while active foreclosures were being completed.
49. Carrington, as successor servicer, failed to carry over or honor Rushmore's pending dispute obligations in violation of **12 U.S.C. § 2605(d)**.Plaintiffs suffered actual damages as a result, including severe confusion about where to direct payments and disputes, and loss of continuity of dispute processing (**Exhibit 10A**).

**COUNT III: VIOLATION OF RESPA REGULATION X (12 C.F.R. § 1024.41)**

*(Against Defendants Rushmore, Carrington, and Clear Recon Corp)*

51. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
52. Under RESPA Regulation X, **12 C.F.R. § 1024.41**, a servicer shall not make the first notice or filing, or conduct a foreclosure sale, while a borrower's complete loss mitigation application or active written dispute is pending.
53. Defendants made and continued foreclosure notices, filings, and actions while Plaintiffs' written dispute was open, acknowledged, and completely unresolved, constituting prohibited dual-tracking.
54. Pursuant to **12 U.S.C. § 2605(f)**, Plaintiffs are entitled to actual damages, statutory damages, and attorney's fees.

**COUNT IV: VIOLATION OF TILA (15 U.S.C. § 1641(g))**

*(Against Defendant Barclays Bank PLC)*

55. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
56. On or about January 29, 2026, Barclays became the new owner of the Note and beneficial interest in the Deed of Trust.
57. TILA **§ 1641(g)** requires that the new owner of a mortgage loan notify the borrower in writing within thirty (30) days of the date of the transfer, identifying the new owner, transfer date, and contact information.
58. Defendant Barclays failed to provide Plaintiffs with this required written notice within thirty (30) days of January 29, 2026. Plaintiffs did not receive this notice until February 23, 2026, after the unlawful sale on February 17, 2026, had already occurred.
59. As a result, Plaintiffs were prejudiced in their ability to direct disputes and reinstatement funds to the proper creditor prior to foreclosure.

**COUNT V: VIOLATION OF TILA (15 U.S.C. § 1635)**

*(Against All Defendants)*

60. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
61. Plaintiffs served a written Notice of Rescission on Defendants on February 18, 2026, pursuant to **15 U.S.C. § 1635**.
62. Defendants failed to respond to the rescission notice within twenty (20) days as required by **15 U.S.C. § 1635(b)**, and instead continued to pursue transfer, eviction, and liquidation of the Property.
63. Defendants' failure to honor Plaintiffs' rescission right constitutes a direct violation of TILA, and Plaintiffs are entitled to full rescission of the transaction and statutory damages.

**COUNT VI: VIOLATION OF THE FDCPA (15 U.S.C. §§ 1692e, 1692f, 1692g)**

*(Against Defendants Rushmore and Carrington)*

64. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
65. Defendants Rushmore and Carrington are "debt collectors" within the meaning of **15 U.S.C. § 1692a(6)** because they acquired servicing rights to Plaintiffs' loan at a time when the loan was already in default.
66. Defendants violated **15 U.S.C. § 1692g** by failing to provide proper debt validation notices and by continuing collection activity, including foreclosure, while Plaintiffs' written dispute was pending.
67. Defendants violated **15 U.S.C. § 1692e** by making false, deceptive, or misleading representations about the character, amount, and legal status of the debt, and violated **15 U.S.C. § 1692f** by employing unfair and unconscionable means to collect a debt.

**COUNT VII: TRUSTEE MISCONDUCT (ORS 86.713)**

*(Against Defendant Clear Recon Corp)*

68. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
69. Under Oregon law, a trustee conducting a non-judicial foreclosure under ORS Chapter 86 occupies a quasi-judicial role and owes enforceable duties of good faith and impartiality to both the beneficiary and the grantor (borrower) under **ORS 86.713**.
70. Clear Recon Corp violated these duties by: (a) issuing a blanket denial of Plaintiffs' legal objections; (b) failing to verify that the entity directing the foreclosure was the true and current beneficial interest holder; and (c) explicitly admitting that it would not pause the sale to verify a timely reinstatement wire tendered on the morning of the auction.
71. This misconduct constitutes a breach of statutory duties and renders the resulting trustee's sale void or voidable.

**COUNT VIII: WRONGFUL FORECLOSURE**

72. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
73. Defendants initiated and pursued non-judicial foreclosure proceedings against the Property without proper legal authority, in violation of applicable statutory notice requirements, and in the face of unresolved disputes regarding the chain of title and identity of the true beneficiary.

**COUNT IX: QUIET TITLE**

*(Against All Defendants)*

74. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
75. Plaintiffs request that this Court determine the respective rights and interests of the parties in the Property and issue a judgment quieting title in Plaintiffs' favor,

free and clear of any interest claimed by Defendants arising from the wrongful foreclosure proceedings.

## COUNT X: INJUNCTIVE RELIEF

*(Against All Defendants)*

76. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.
77. Unless immediately restrained and enjoined, Defendants will proceed with physical eviction and the continued transfer or encumbrance of the Property, causing irreparable harm to Plaintiffs in the form of the permanent loss of their primary residence, masonry business location, and farm—a harm for which money damages alone are inadequate.
78. Plaintiffs have a substantial likelihood of success on the merits, and the balance of hardships tips decidedly in Plaintiffs' favor

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs JASON P. WRIGHT and JACQUELINE A. WRIGHT respectfully request that this Court enter judgment in their favor and against Defendants as follows:

1. Actual damages in an amount to be proven at trial for economic loss, business loss, legal fees, and emotional distress;
2. Statutory damages pursuant to RESPA (12 U.S.C. § 2605(f)), TILA (15 U.S.C. § 1640), and the FDCPA (15 U.S.C. § 1692k);
3. Treble damages in an amount equal to three times the total actual economic damages and lost property equity proven at trial, as authorized under Oregon law
4. Rescission of the loan transaction pursuant to TILA § 1635 and Regulation Z, and a declaration that the non-judicial foreclosure proceedings and subsequent trustee's sale are void or voidable;
5. Cancellation and expungement of any trustee's deed recorded against the Property following the unauthorized sale;
6. A judgment quieting title to the Property in Plaintiffs' names, free and clear of any interest asserted by Defendants;
7. An order enjoining Defendants, their agents, and anyone acting in concert with them from transferring, encumbering, liquidating, or entering the Property, and staying or halting state court eviction case no. 26LT06196 pending final adjudication of this federal lawsuit; and
8. For such other statutory, equitable, or cooling-off remedies and relief as this Court deems just and proper under the law.

## VI. DEMAND FOR JURY TRIAL

Pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable as a matter of right.

---

## VII. CERTIFICATION AND CLOSING

By signing below, I certify under Federal Rule of Civil Procedure 11 that this complaint is not being submitted for an improper purpose, to cause delay, or needlessly run up litigation expenses. I further believe that all facts, actions, and legal claims presented to this Court have evidentiary support and are true and correct to the best of my knowledge.

Date of Signing: July 23, 2026

Respectfully Submitted,

JASON P. WRIGHT, Plaintiff Pro Se

JACQUELINE A. WRIGHT, Plaintiff Pro Se

9449 NE Keyes Ln

Dundee, OR 97115

Phone: 971-545-1070 | 503-550-6839

Email: jwrightmasonry@frontier.com | jjwrightwrightmasonry@gmail.com